## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANE DOE,
      *Plaintiff*,

      v.

No. 3:17-cv-2031 (VAB)

PAYCHEX, INC., USI INSURANCE
SERVICES OF CONNECTICUT, INC., &
USI INSURANCE SERVICES, LLC.,
      *Defendants*.

## RULING AND ORDER ON MOTIONS

From January 2, 2015 to August 1, 2015, Jane Doe ("Plaintiff"), *pro se*, allegedly worked for Paychex, Inc. ("Paychex") as a sales agent. Complaint ("Compl."), ECF No. 1 ¶ 7a. Ms. Doe allegedly suffered discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; and discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* Compl. ¶ 4; Am. Compl., ECF No. 12, ¶ 6.

Ms. Doe also alleges violations of the National Labor Relations Act of 1935, 29 U.S.C. § 151 *et seq.* and Health Insurance Portability and Accountability Act; unlawful termination in violation of Connecticut's protected speech law, Connecticut General Statute 31-51q; libel and slander in violation of Connecticut General Statute 52-597; failure to pay out remaining sick time leave or retaliation for the use of sick time in violation of Connecticut General Statute 31-57v; termination of a sales contract and failure to pay commissions in violation of Connecticut General Statute 42-482; failure to produce an employee handbook in violation of Connecticut General Statute 31-71f; invasion of privacy in violation of Connecticut General Statute 42-471; and tortious interference. Am. Compl. ¶ 9.

1

In her Amended Complaint, Ms. Doe names USI Insurance Services of Connecticut, Inc. and USI Insurance Services, LLC ("USI Defendants") as Defendants. Am. Compl., ECF No. 12, ¶ 9zzz.

In her Second and Third Amended Complaints, Ms. Doe proposes further theories of liability (*e.g.*, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1111 *et seq.*; Lanham Act, 15 U.S.C. §1051 et seq.; Fair Credit Reporting Act, 16 U.S.C. § 1681 *et seq.*; and federal procurement laws, Second. Am. Compl., ECF No. 35, ¶ 6.).

Eight motions are pending before the Court: (1) Ms. Doe's motion to seal the case, Mot. to Seal, ECF No. 2; (2) Paychex's motion to dismiss the Complaint, Mot. to Dismiss, ECF No. 16; (3) Ms. Doe's motion to disqualify attorney Marc L. Zaken and Ogletree, Deakins, Nash, Smoak & Steward, P.C., Mot. to Recuse, ECF No. 19; (4) Defendants' motion to unseal the case, Mot. to Unseal, ECF No. 23; (5) Ms. Doe's motion to amend or correct the Amended Complaint, Mot. to Amend, ECF No. 46; (6) Paychex's motion to dismiss the Second Amended Complaint, Paychex Mot. to Dismiss Second Am. Compl., ECF No. 47; (7) USI Defendants' motion to dismiss the Second Amended Complaint, USI Mot. to Dismiss Second Am. Compl., ECF No. 48; and (8) Ms. Doe's motion for a new hearing, Mot. for New Hearing on the Mots., ECF, No. 65.

For the reasons set forth below, the Court now **GRANTS in part and DENIES in part** Defendants' motions to dismiss, and dismisses all claims against the USI Defendants, ECF No. 48; and Ms. Doe's claims against Paychex for violations of the Americans with Disabilities Act, Health Insurance Portability Accountability Act, National Labor Relations Act, state and federal laws regarding data privacy, employee handbooks, libel and slander, protected speech, sales representative commissions, sick leave violations, protected speech, and tortious interference,

leaving only her claims for sex discrimination, a hostile workplace, and retaliation under Title VII in this case, ECF Nos. 16, 47; **DENIES** Ms. Doe's motion to amend, ECF No. 46; **DENIES** Ms. Doe's motion to seal the case, ECF No. 2, **GRANTS** Defendants' motion to unseal the case, ECF No. 23; **DENIES** Ms. Doe's motion to recuse, ECF No. 19, and **DENIES** Ms. Doe's motion to supplement and for a new hearing, ECF, No. 65.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations

Ms. Doe allegedly suffers from anxiety, PTSD caused by a "previous employer's reckless disregard of her rights," and a right shoulder injury. Am. Compl. ¶¶ 9xx–zz.

For the first seven months of 2015, Ms. Doe allegedly worked as an outside sales agent in Paychex's health and benefits division. Compl. ¶ 7a. She allegedly managed all of the Connecticut accounts for corporate customers employing more than 50 employees. *Id*. ¶ 7f. Six months into Ms. Doe's employment, Paychex allegedly redistributed regional sales assignments. *Id*. As a result of that redistribution, Ms. Doe allegedly lost larger accounts to two male sales agents. *Id*.

During her employment, Ms. Doe allegedly alerted managers to the unethical activities of a male sales agent. *Id*. ¶¶ 7g, k, q. That sales agent ultimately filed an internal complaint against Ms. Doe. *Id*. ¶¶ 7s–t.

On July 20, 2015, Ms. Doe's supervisor, Mr. Ellsworth, allegedly told her about the sales agent's complaint against her. *Id*. ¶ 7dd. Ms. Doe asked Mr. Ellsworth to call Human Resources so that they could connect her to the complaining agent to discuss his complaint. *Id*. ¶ 7dd. Mr. Ellsworth refused to call Human Resources, so Ms. Doe asked to be terminated. *Id*. Another manager allegedly told Ms. Doe that she would not be terminated. *Id*.

On July 21, 2015, Ms. Doe allegedly contacted Paychex's Human Resources department and filed an internal discrimination complaint against Mr. Ellsworth for "inappropriate actions" such as warning her not to respond to his emails with corrections or admonishments that he "do [his] job", *id*. ¶ 7j, m; writing her up because she used allegedly improper "best interest" language with her coworkers, *id*. ¶ 7aa; failing to research accounts that Ms. Doe felt were being mishandled, *id*. ¶ 7k; and falsifying or refusing to pay commissions, *id*. ¶ 7l. Ms. Doe allegedly asked to be relocated due to the hostile work environment created by Mr. Ellsworth. *Id*. ¶ 7ee.

On July 22, 2015, a Human Resources employee told Ms. Doe to begin transferring her accounts to Mr. Ellsworth. *Id*. ¶ 7ff. Ms. Doe proposed, alternatively, that the company relocate her. *Id*. ¶ 7ff.

On July 23, 2015, Paychex's Human Resources allegedly notified Ms. Doe that she was to report to its Rocky Hill location at 8:30am on July 25, 2015. *Id*. ¶ 7gg. Ms. Doe allegedly responded that she could not come to the Rocky Hill office then and that they could charge her paid time off or accrued vacation time if needed. *Id*. ¶ 7hh–ii.

On July 25, 2015, Human Resources allegedly contacted Ms. Doe and told her that if she could not attend a 2:00pm meeting with Mr. Ellsworth, she would be terminated. *id*. ¶ 7jj. Ms. Doe allegedly agreed to attend the meeting so long as a neutral third party or her attorney was in attendance. *Id*. ¶ 7jj. Ms. Doe did not attend the meeting. *Id*. ¶ 7nn.

On July 27, 2015 Ms. Doe contacted Human Resources and learned that she had been terminated. *Id*. ¶ 7mm.

After Ms. Doe was terminated, Paychex allegedly failed to continued her insurance and refused to authorize her unemployment compensation. Am. Comp. ¶ 9eee–fff.

On January 19, 2016, Ms. Doe filed an employment discrimination complaint with the Connecticut Commission on Human Rights and Opportunities. CHRO Compl., ECF No. 16-1.

On February 22, 2016, Ms. Doe allegedly filed a Wage and Labor dispute with the Department of Labor for outstanding commissions owed to her under her contract with Paychex. *Id*. ¶ 9oo.

The Connecticut Commission on Human Rights and Opportunities allegedly issued Ms. Doe a "Notice of Right to Sue" letter. Am. Compl. ¶ 10.

### B.     Procedural Background

On December 7, 2017, Plaintiff filed her initial Complaint, Compl., and a motion to seal the case. Mot. to Seal.

On March 12, 2018, before the Defendants had responded to the initial Complaint, Plaintiff filed an amended Complaint. Am. Compl.

On March 26, 2018, Defendants moved to unseal the case, Mot. to Unseal.

On April 27, 2018, Paychex moved to dismiss the Complaint, Mot. to Dismiss.

On May 7, 2018, Plaintiff moved to recuse attorney Marc L. Zaken and Ogletree, Deakins, Nash, Smoak & Steward, P.C., Mot. to Recuse, and responded to Defendants' motion to unseal the case, Response re: Mot. to Unseal, ECF No. 20.

On May 18, 2018, Defendants filed a reply in support of unsealing the case. Reply to Resp. to Mot. to Unseal Case, ECF No. 24.

On May 24, 2018, Defendants opposed the motion to recuse attorney Zaken and his law firm. Mem. in Opp. to Recusal, ECF No. 22.

On August 14 and 17, 2018, Plaintiff filed further briefs in support of her motion to recuse. ECF Nos. 31–32.

On September 6, 2018, Plaintiff opposed Paychex's motion to dismiss. Pl. Mem. of Law in Support of Mot. to Dismiss, ECF No. 34.

On October 9, 2018, Plaintiff filed her second amended complaint. Second Am. Compl., ECF No. 35.

On November 8, 2018, Plaintiff moved for default entry and default judgment against the USI Defendants. Mot. for Default Entry ECF No. 36; Mot. for Judgment, ECF No. 37.

On November 14 and 15, 2018, the Court denied default entry and default judgment. Orders, ECF No. 39 and 40.

On November 21, 2018, Plaintiff filed a memorandum in support of default entry. Mem. of Points in Supp. of Default Entry, ECF No. 43.

On November 30, 2018, Plaintiff moved for default judgment against Defendants. ECF No. 44. The Court denied the motion on December 3, 2018. Order, ECF No. 45.

On January 23, 2019, Plaintiff filed a motion to amend, Mot. to Amend, and attached a fourth version of the Complaint to the motion, ECF No. 46-1.

On January 24, 2019, Paychex moved to dismiss the Second Amended Complaint. Paychex Mot. to Dismiss Second Am. Compl. That day, USI Defendants also moved to dismiss the Second Amended Complaint. USI Mot. to Dismiss Second Am. Compl.

On February 5, 2019, Ms. Doe objected to the motions to dismiss. Obj. to Mot. to Dismiss Second Am. Compl. ECF No. 50.

On February 14, 2019, the USI Defendants opposed the motion to amend the second amended complaint. Mot. in Opp. to Mot. to Amend, ECF No. 52.

On February 26, 2019, Paychex and the USI Defendants each filed a reply in support of the motion to dismiss. ECF Nos. 54–55.

On March 7, 2019, Plaintiff filed a motion for default judgment against the Defendants, Mot. Default J., ECF No. 56, and a motion for default judgment and injunction against the Defendants, Mot. for Default J. and Injunction, ECF No. 57.

On March 11, 2019, Defendants objected to the motion to amend the second amended complaint. Obj. to Amend. Second Am. Compl., ECF No. 57.

On March 15, 2019, Plaintiff filed a memorandum in support of her motions for default judgment. ECF No. 60.

On April 9, 2019, the Court held a hearing on all pending motions. Minute Entry, ECF No. 62.

On April 26, 2019, Ms. Doe submitted a supplement filing to the Court and requested a new hearing to allow her to clarify her arguments. Mot. for New Hearing on the Mots.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the

complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), *quoting Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

On a motion to dismiss under Rule 12(b)(6), a court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). This is particularly true if the documents are "'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied by the letters attached" to the complaint); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (when reviewing a judgment on the pleadings, courts assume facts alleged are true "unless contradicted by more specific allegations or documentary evidence.").

## III. DISCUSSION

### A. Administrative Exhaustion

Both Title VII and the Americans with Disabilities Act require plaintiffs to exhaust administrative remedies before filing in federal court. *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) ("Before bringing a Title VII suit in federal court, an individual must

first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.') (*quoting Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir.2006) (per curiam)); *Kelly v. N. Shore–Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016) ("The ADA requires that a plaintiff exhaust all available administrative remedies before filing an employment discrimination action.").

Federal courts will consider allegations that reasonably relate to the discrimination claims submitted to the administrative agency. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) ("Thus, [w]e have recognized . . . that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.") (*quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (per curiam) (internal quotation marks omitted)). "Reasonably related conduct is that which 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (*quoting Fitzgerald,* 251 F.3d at 359-60).

By contrast, unrelated allegations are those that would not have alerted the administrative agency of a need to investigate. *See Littlejohn*, 795 F.3d at 323 ("We agree with the district court that Littlejohn's sexual harassment claim is not 'reasonably related' to her EEOC discrimination claims, which were based solely on race and color. Stradford's alleged sexual harassment does not fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge[s] of race discrimination[.]") (internal quotations omitted)); *see also Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 668-69 (S.D.N.Y. 2012) ("Plaintiff alleged nothing about race discrimination in her EEOC Complaint, and cited no facts that would have allowed the EEOC to investigate such discrimination. Both the 'race' and 'color' boxes under the

'Circumstances of Alleged Discrimination' section of the cover sheet to her EEOC charge remain unchecked; only the boxes for 'sex' and 'retaliation' were checked . . . . Therefore, Plaintiff's Title VII claims related to her race are dismissed for failure to exhausted administrative remedies.") (internal citation omitted)).

Ms. Doe argues that she exhausted her administrative remedies and received a right to sue letter. Am. Compl. ¶ 10–11.

Defendants contend that Ms. Doe's administrative complaint alleged only sex discrimination and perceived disability discrimination on account of her shoulder injury. Def. Mem. of Law in Supp. of Mot. to Dismiss. Pl. Am. Compl., ECF No. 16-1, at 6. As a result, Defendants argue that discrimination claims related to Ms. Doe's race, color, religion, national origin, or non-shoulder disabilities are not ripe for review by this Court. Def. Mem. of Law in Supp. of Mot. to Dismiss. Pl. Am. Compl., ECF No. 16-1, at 6.

The Court agrees.

Shortly after her termination, Ms. Doe filed an employment discrimination complaint with the Connecticut Commission on Human Rights and Opportunities. CHRO Compl. That complaint alleged that Ms. Ellsworth had treated Ms. Doe unfairly on July 20, 2015 ("Mr. Ellsworth gave a false complaint to me. The complaint was libelous and slanderous in nature and was not true. The complaint was based on retaliation from another sales rep . . . . [who] was not held accountable when brought to management's attention[.]"). *Id.* Ms. Doe then listed the names of three male employees who were allegedly treated more favorably than her. CHRO Compl. at 3 ("they were given favorable decision over dispersment of leads. They were also not held . . . accountable or to the same standard."). Ms. Doe alleged that she reported this sex discrimination on July 21, 2015 and then suffered retaliatory termination. *Id.*

Ms. Doe's allegations regarding Mr. Ellsworth's treatment, a male sales representative's complaint, and male sales' agents lead opportunities would have put the Connecticut Commission on Human Rights and Opportunities on notice to investigate sex-based discrimination, hostile workplace, and retaliation claims. *See Jute*, 420 F.3d at 177 ("Reasonably related conduct is that which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.") (internal citation and quotation omitted).

Ms. Doe's administrative complaint, however, would not have alerted the agency to claims of race, color, religion, or national origin discrimination. She neither checked the requisite boxes for such offenses nor alleged incidents of race, color, religion, or national origin discrimination in her administrative complaint. *Davis-Bell*, 851 F. Supp. 2d at 668-69 (S.D.N.Y. 2012) ("Plaintiff alleged nothing about race discrimination in her EEOC Complaint . . . . Both the 'race' and 'color' boxes under the 'Circumstances of Alleged Discrimination' section of the cover sheet to her EEOC charge remain unchecked ."). As a result, such issues are not ripe for review by this Court. *Littlejohn*, 795 F.3d at 322 ("Before bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.").

Similarly, Ms. Doe did not claim mental disability discrimination in her agency complaint.

In her agency complaint, Ms. Doe alleged that she has a permanent disability rating for a shoulder injury. CHRO Compl. at 4. Further, she alleged that she "had a MRI scheduled on 7/20/2015 to determine the severity of a shoulder issue which might need additional surgery . . . . [and her] supervis[or] scheduled a mandatory meeting on days that he knew she had prior

medical commi[tments]." *Id*. Ms. Doe's agency complaint would have put the Commission on notice to investigate discrimination based upon Ms. Doe's shoulder, arm, lifting capacities, or other "[r]easonably related conduct." *Jute*, 420 F.3d at 177. Anxiety and PTSD are not reasonably related to a shoulder injury. As a result, alleged discrimination based upon such impairments is not ripe for review by this Court. *Kelly*, 166 F. Supp. 3d at 288 (*"*The ADA requires that a plaintiff exhaust all available administrative remedies before filing an employment discrimination action."). For this reason, Ms. Doe's claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq*. must be dismissed.[1]

### B.     Sex Discrimination

Title VII prohibits employers from discriminating on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Courts apply a three-step burden shifting framework to claims of employment discrimination. *Roncallo v. Sikorsky Aircraft*, 447 F. App'x 243, 245 (2d Cir. 2011), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "At step one of the *McDonnell Douglas* analysis, the plaintiff must establish a prima facie case of discrimination by showing that: 1) he [or she] belonged to a protected class; 2) he [or she] was qualified for the position; 3) he [or she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Id*. (internal quotations omitted), *citing Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ*., 202 F.3d 636, 640 (2d Cir.

---

[1] In addition to her failure to exhaust, Ms. Doe has alleged no cognizable claim for relief under the Americans with Disabilities Act for her shoulder injury, perceived shoulder impairment, PTSD, or anxiety. She has not claimed disability discrimination or a failure to provide reasonable accommodations (e.g., lifting assistance). As a result, any remaining ADA claims must be dismissed. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

2000) (internal quotations and citations omitted).[2] "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin*., 361 F.3d 749, 755 (2d Cir.2004). Transfer from one sales position to another may constitute a materially adverse employment action. *Santiesteban v. Nestle Waters N. Am*., Inc., 61 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (Denying, in part, an employer's motion for summary judgment because "the fact that Plaintiff was given a greater salary and benefits upon his transfer from the SRC position to the KASM position demonstrates a triable issue of fact as to whether the KASM position was a more distinguished position than the SRC position. Thus, Plaintiff has come forth with sufficient evidence to show that his transfer from the KASM position back to the SRC position was a materially adverse employment action."); *cf Wilson v. Int'l Bus. Machines, Inc*., 323 F. Supp. 2d 370, 373–75 (N.D.N.Y. 2004) (Granting an employer's motion for summary judgment in a Title VII sex discrimination case of a sales agent because "without some indicia that IBM treated Plaintiff differently because she was pregnant or because she was female, there can be no inference of unlawful discrimination.").

Ms. Doe alleges that she lost sales accounts to male colleagues as a result of Paychex's redistribution of territories and that she was terminated on account of her sex. Compl. ¶ 7.

Defendants argue that her "claim of sex discrimination fails as a matter of law because she does not plead any facts that give rise to an inference that her being female . . . resulted in an

---

[2] In *Galabya*, the plaintiff sued under the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 621 *et seq.* The definition articulated in *Galabya* of an "adverse employment action," is widely cited in the Second Circuit, including in Title VII cases. *See, e.g.*, *Rodriguez v. Westbury Pub. Sch*., No. 13-cv-4976, 2015 WL 4459351, at *5 (E.D.N.Y. July 15, 2015) ("A preliminary issue here is whether Plaintiff has suffered an 'adverse employment action' as required. A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."), *citing Galabya,* 202 F.3d at 640.

adverse employment action, including termination." Mem. of Law in Supp. of Mot. to Dismiss at 26.

The Court disagrees.

Paychex redistributed geographic sales territories six months into Ms. Doe's employment. Compl. ¶¶ 7e–f. Though that redistribution "affected everyone," *id*., Ms. Doe alleges that she had exclusive control over Connecticut accounts before that change. *Id*. at ¶ 7f. Ms. Doe alleges that through the redistribution, her male colleagues were given access to her accounts, and that she lost revenue as a result. *Id*. at ¶ 7f. Further, Ms. Doe alleges that the redistribution changed the nature of her work from a sales agent for large accounts to small accounts. *Id*.

At the motion to dismiss stage, Ms. Doe has plausibly alleged that she suffered an adverse employment action when her exclusive accounts were opened up to her male colleagues. *Roncallo*, 447 F. App'x at 245 ("At step one of the *McDonnell Douglas* analysis, the plaintiff must establish a prima facie case of discrimination by showing that . . . he [or she] suffered an adverse employment action[.]"). Whether that change in sales responsibilities constituted employment discrimination is more appropriately decided at the summary judgment stage. *See Santiesteban*, 61 F. Supp. 3d at 235 (recognizing that "the fact that Plaintiff was given a greater salary and benefits upon his transfer from the SRC position to the KASM position demonstrates a triable issue of fact as to whether the KASM position was a more distinguished position than the SRC position."); *cf Wilson*, 323 F. Supp. 2d at 75 (recognizing at the summary judgment stage that "without some indicia that IBM treated Plaintiff differently because she was pregnant or because she was female, there can be no inference of unlawful discrimination."). Similarly,

whether Ms. Doe's termination was a result of sex discrimination is better decided on a fuller record, at the summary judgment stage.

Accordingly, the Court will deny Paychex's motion to dismiss Ms. Doe's claims of sex discrimination.

### C.      Hostile Workplace

To establish a hostile work environment claim under Title VII, a plaintiff must show "that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014), *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In *Harris,* the Supreme Court laid out a two-part test for hostile workplace claims. The plaintiff must show that the workplace is both objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.*

Courts "assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id., quoting Harris*, 510 U.S. at 23. Title VII does not prohibit, however, "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Ms. Doe alleges that she "was subject to a hostile work environment," Compl. ¶ 5c, see also *id*. ¶ 7c, and that she notified Paychex managers and Human Resources of the hostile work environment, *id*. ¶ 7c, h, j, ee, ll, rr, vv, xx, et al.

Defendant argues that Ms. Doe has failed to plausibly allege a hostile work environment claim on the basis of these events. Mem. of Law in Supp. of Mot. to Dismiss at 24–25.

The Court disagrees.

A hostile workplace is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Raspardo*, 770 F.3d at 114. The standard is not subjective. Rather, an employee must plead facts sufficient to demonstrate "that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.*

In addition to the sales territory redistribution discussed above, Ms. Doe bases her hostile workplace claim on a sales agent's complaint against her, Compl. ¶¶ 7s–t; Mr. Ellsworth's handling of that complaint, *id.* ¶ aa, ll, *et al.*; several other disagreements with Mr. Ellsworth, *id.* ¶¶ 7j, aa *et al.*; and other supervisors' handling of her complaints of a hostile workplace, *id.* ¶¶ 7rr,vv *et al.* The allegations contained in Ms. Doe's complaints, considered together and liberally construed, particularly given her *pro se* status, "to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403, might demonstrate an objectively hostile work environment. As a result, the Court will await the close of discovery and any summary judgment motion before deciding whether Ms. Doe's claims of a hostile work environment should be dismissed.

Accordingly, the Court will deny Paychex's motion to dismiss Ms. Doe's hostile workplace claim.

### D. Retaliation

Title VII prohibits an employer from discriminating against an employee because the employee has opposed an employment practice prohibited by Title VII. 42 U.S.C. § 2000e-3(a).

Title VII retaliation claims are "analyzed under the McDonnell Douglas burden-shifting test." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). "Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she 'participated in a protected activity,' 'suffered an adverse employment action,' and 'that there was a causal connection between her engaging in the protected activity and the adverse employment action.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015), *quoting Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

The Second Circuit has held that informal complaints of discrimination constitute "protected activity" under Title VII. *Matima v. Celli*, 228 F.3d 68, 78–79 (2d Cir. 2000) ("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.") (internal quotation and citation omitted)); *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001), *as amended* (Apr. 20, 2001) ("Here, Gregory's oral and written complaints about Daly's behavior, as well as her filing of a lawsuit in state court, were undoubtedly forms of protected activity.").

While "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," it only protects an individual "from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006). To satisfy this standard, a plaintiff must show that the action "would dissuade a reasonable worker from making or supporting a charge of discrimination[.]" *Potenza v. W. Irondequoit Cent. Sch. Dist.*, No. 06-cv-6407, 2009 WL 2876204, at *7 (W.D.N.Y. Sept. 2, 2009), *citing Burlington Northern*, 548 U.S. at 68.

Ms. Doe alleges that she was fired for reporting sex discrimination and a hostile work environment to supervisors and Human Resources. Compl. 7h, j, ee, *et al*.

Defendants argue that none of Ms. Doe's complaints "are protected by Title VII's opposition clause." Mem. of Law in Supp. of Mot. to Dismiss at 28–29.

The Court disagrees.

To survive a motion to dismiss, Ms. Doe must show that she participated in a protected activity, suffered an adverse employment action, and that there was a causal connection between the two. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (explaining that the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she 'participated in a protected activity,' 'suffered an adverse employment action,' and 'that there was a causal connection . . . .'" between the two). At this stage of the case, she has satisfied this burden.

On July 21, 2015, Ms. Doe allegedly filed a complaint with Human Resources and asked to be relocated due to the hostile work environment created by Mr. Ellsworth. Compl. ¶ 7ee. That complaint plausibly alerted Paychex's Human Resources to Ms. Doe's sex discrimination complaint.

On July 22, 2015, a Human Resources employee told Ms. Doe to begin transferring her accounts to Mr. Ellsworth. *Id*. ¶ 7ff. Ms. Doe was terminated less than a week later. *Id*. ¶ 7mm. The latter event, termination, is an adverse employment action. The transfer instruction, given one day after Ms. Doe's hostile workplace complaint, suggests a causal connection between Ms. Doe's protected activity and her termination. Further, both the instruction to relinquish her sales accounts and Ms. Doe's termination are the sort of injuries or harms that "would dissuade a

reasonable [sales person] from making or supporting a charge of discrimination[.]." *Potenza*,

2009 WL 2876204, at *7 (W.D.N.Y. Sept. 2, 2009), *citing Burlington Northern*, 548 U.S. at 68.

Accordingly, the Court will not dismiss Ms. Doe's retaliation claim at this time.[3]

## E.    Remaining Claims

Ms. Doe's remaining claims must be dismissed as legally insufficient for the reasons that

follow.

### 1.    National Labor Relations Act Claims

Individual plaintiffs do not have a right to sue under the National Labor Relations Act.

*See Sandoval v. New Mexico Tech. Grp. LLC.*, 174 F. Supp. 2d 1224, 1230 (D.N.M. 2001) ("The

Court has gone to great lengths to examine the NLRA, in its entirety, for a cause of action that

could arise pursuant to the allegations in the complaint. However, the complaint simply does not

assert any particular statutory entitlement for the relief it seeks. Thus, the law that creates the

cause of action is state law, and original jurisdiction is unavailable unless it appears that some

substantial, disputed question of federal law is a necessary element of the well-pleaded state

claim, or that the claim is 'really' one based on federal law."). Instead, the Act authorizes the

National Labor Relations Board to investigate violations of certain federal labor laws. 29 U.S.C.

§ 153 (conferring the power "to investigate and provide for hearings" on the NLRB).

Accordingly, the Court will dismiss Ms. Doe's National Labor Relations Act claims.

### 2.    Health Insurance Portability and Accountability Act Claims

The Health Insurance Portability and Accountability Act does not provide a private cause

of action to individual plaintiffs. *McQuay v. Pelkey*, No. 3:16-CV-436 (MPS), 2017 WL

---

[3] Defendants allege that Ms. Doe was terminated because she refused to report to a mandatory meeting on July 23, 2015. Mem. of Law in Supp. of Mot. to Dismiss at 5, 29. This allegation, and Paychex's reasons for requiring Ms. Doe to transfer her files to Mr. Ellsworth on July 22, 2015, are better addressed on a fuller factual record at the motion for summary judgment stage.

2174403, at *3 (D. Conn. May 17, 2017). Instead, the Act delegates enforcement of the statute to the Secretary of Health and Human Services. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement.").

Accordingly, the Court will dismiss Ms. Doe's Health Insurance Portability and Accountability Act claims.

### 3.    Connecticut Data Privacy Claims

Connecticut General Statute 42-471 *et seq.* authorizes the Connecticut Consumer Protection Commissioner to investigate breaches of consumer data, such as the posting of customers' social security numbers to web sites. CONN. GEN. STAT. § 42-471, 472(c). The law establishes a process for grieving the decision or order of the Commissioner, but does not create an independent right to sue. CONN. GEN. STAT. § 42-472(c). The law requires administrative exhaustion and does not confer a private cause of action on plaintiffs.

Accordingly, the Court will dismiss Ms. Doe's § 42-471 claims.

### 4.    Connecticut Sick Leave Claims

Connecticut General Statute 31-57v authorizes the Connecticut Labor Commissioner to investigate retaliation against employees who take sick leave. CONN. GEN. STAT. § 31-57v(a) ("No employer shall take retaliatory personnel action or discriminate against an employee because the employee (1) requests or uses paid sick leave . . . or (2) files a complaint with the Labor Commissioner alleging the employer's violation[ of this Act]."). If an employee disagrees with the results of the Commissioner's investigation, she or he "may appeal the decision to the Superior Court." CONN. GEN. STAT. § 31-57v(a). The law requires administrative exhaustion and does not confer a private right of action on plaintiffs.

Accordingly, the Court will dismiss Ms. Doe's § 31-57v claims.

### 5. Connecticut Sales Representative Claims

Connecticut General Statute 42-482 permits a contract or freelance sales representative to sue for certain contract terminations and outstanding commissions. CONN. GEN. STAT. § 42-482. The plain language of this statute, however, does not cover employees. CONN. GEN. STAT. ANN. § 42-481 ("'Sales representative' does not include an employee or a person who places orders or purchases on the person's own account or for resale or a seller[.]"). As her own Complaint makes clear, Ms. Doe was employed by Paychex. Compl. ¶ 3. She was not a freelance sales agent operating under a contract with Paychex.

Accordingly, the Court will dismiss Ms. Doe's sales contracts and commissions claims brought under § 42-482, as well as any other claims related to this statute.

### 6. Connecticut Employee Handbook Claims

Connecticut General Statute 31-71f, a sub-section of Connecticut's wages and withholdings law, requires an employer to provide its employees with its "employment practices and policies." CONN. GEN. STAT. ANN. § 31-71f. The broader wage and withholdings law authorizes the state attorney general to prosecute violations of the law in state court. *See, e.g.*, *State v. Wilson*, 83 Conn. App. 67, 68, 848 A.2d 542, 543 (2004) ("The defendant, Barrie Wilson, appeals from the judgment of conviction, rendered after a jury trial, of eight counts of failure to pay wages in violation of General Statutes § 31-71b."); CONN. GEN. STAT. ANN. § 31-71g (Penalty section of C.G.S. 31-71). This statute, however, does not create a private cause of action for an employer's failure to furnish a handbook to an employee. Further, Ms. Doe's allegations seem to stem from her post-termination lack of access to Paychex's employee

handbook. At most, those allegations indicate a discovery issue under Federal Rule of Civil

Procedure 26, not an actionable claim under Connecticut law. FED. R. CIV. P. 26.

Accordingly, the Court will dismiss Ms. Doe's § 31-71f claims.

### 7. Connecticut Protected Speech Claims

Connecticut General Statute 31-51q provides that

Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge[.]"

CONN. GEN. STAT. § 31-51q.

Most employee speech is not protected under § 31-51q. Rather, "[t]o qualify as protected

activity under this statute, [an employee's] 'speech must be on a matter of public concern . . .'"

*McClain v. Pfizer, Inc.*, 692 F. Supp. 2d 229, 241–42 (D. Conn. 2010) (*quoting Cotto v. United*

*Technologies Corp.* 48 Conn.App. 618, 711 A.2d 1180, 1186 (1998).). An employee will not

prevail under § 31-51q when she "speaks not as a citizen upon matters of public concern, but

instead as an employee upon matters only of personal interest." *Id*. (*quoting Connick v. Myers*,

461 U.S. 138, 138–139 (1983). "[A]bsent the most unusual circumstances, a federal court is not

the appropriate forum in which to review the wisdom of a personnel decision taken . . . in

reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983).[4]

Ms. Doe has alleged no matter of public concern. Instead, her allegations stem from her

personal interests in her employment as a Paychex sales agent during seven months of 2015. Ms.

Doe's communications do not constitute the sort of protected speech protected by § 31-51q

---

[4] While the U.S. Supreme Court's decision in *Connick* involved a concerned a public agency employer, Connecticut law, specifically § 31-51q, extends this protection to private employers as well.

Accordingly, the Court will dismiss, Ms. Doe's § 31-51q claims.

### 8. Connecticut Libel or Slander Claims

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (*citing Mercer v. Cosley*, 110 Conn.App. 283, 297, 955 A.2d 550 (Conn.App.Ct.2008)). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her] . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Ravalese v. Lertora*, 186 Conn. App. 722, 729, 200 A.3d 1153, 1157–58 (2018) (*quoting Hopkins v. O'Connor*, 282 Conn. at 821, 838, 925 A.2d 1030 (2007)).

Under Connecticut law, there is a two-year statute of limitations on libel and slander claims. CONN. GEN. STAT. § 52-597 ("No action for libel or slander shall be brought but within two years from the date of the act complained of."). Ms. Doe's libel and slander allegations stem from statements made by a fellow sales agent and Mr. Ellsworth during her employment at Paychex. *See, e.g.*, Compl. ¶¶ 7u, bb, *et al*. Because Ms. Doe was terminated on or before July 27, 2015, Compl. ¶ 7mm, the statute of limitations for any libel or slander claims against Defendants would have expired July 27, 2017, more than four months before the filing of Ms. Doe's complaint. Compl.

While, ordinarily, a statute of limitations issue would not be addressed at the motion to dismiss stage, it is appropriate to do so when the issue is clear from the Complaint itself, as it is

here. *Levy v. BASF Metals Ltd*., 917 F.3d 106, 109 (2d Cir. 2019) ("[T]his is not an inquiry

notice case. The district court held, and we now hold, that Levy had actual knowledge of her

CEA injury in 2008. That knowledge of her CEA injury 'start[ed] the clock,' irrespective of

when she discovered the additional information necessary for her to bring her suit.") (internal

citation omitted)).

Accordingly, the Court will dismiss Ms. Doe's libel and slander claims.

### 9.     Tortious Interference Claims

Ms. Doe asserts that Defendants tortuously interfered with her civil and contract rights.

Am. Compl. ¶¶ 7ttt, uuu, *et al*. Construing Ms. Doe's complaint liberally, *Sykes v. Bank of Am*.,

723 F.3d 399, 403 (Explaining that *pro se* complaints "must be construed liberally and

interpreted to raise the strongest arguments that they suggest."), the Court finds that she is raising

a claim of tortious interference with business relations under Connecticut law.

"A cause of action sounding in tort for interference with another's business practices and

opportunities has long been recognized in Connecticut . . . . A successful action for tortious

interference with business expectancies requires the satisfaction of three elements: '(1) a

business relationship between the plaintiff and another party; (2) the defendant's intentional

interference with the business relationship while knowing of the relationship; and (3) as a result

of the interference, the plaintiff suffers actual loss.'" *Am. Diamond Exch., Inc. v. Alpert*, 101

Conn. App. 83, 90, 920 A.2d 357, 363 (2007) (*quoting Hi–Ho Tower, Inc. v. Com–Tronics, Inc*.,

255 Conn. 20, 27, 761 A.2d 1268 (2000)).

Ms. Doe has failed to plausibly allege any element of a tortious interference claim.

Importantly, Ms. Doe does not allege that she engaged in a business relationship with another

party (e.g., Ms. Doe does not allege that she was a business owner or a freelancer engaged in

business dealings with both Paychex and another employer). Additionally, Ms. Doe does not allege that Paychex knew of that third party or outside business relationship. Relatedly, Ms. Doe does not suggest that Paychex intentionally interfered with that business relationship. Finally, Ms. Doe does not allege loss as a result of the interference with a separate business relationship outside of her employment with Paychex (i.e., her employment contract with Paychex cannot constitute the basis for this claim under Connecticut law).

Accordingly, the Court will dismiss Ms. Doe's tortious interference claim.

### 10. Remaining Claims

Any remaining claims have not been pled with sufficient particularity to provide notice to the Court or Defendants of Plaintiff's entitlement to relief. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)); *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.").

Accordingly, any remaining claims must be dismissed.

### 11. Claims Against USI Defendants

Defendants claim that Ms. Doe has shown no relation between Paychex and USI Defendants other than attorney Zaken's representation of the parties in separate lawsuits, and that all claims against USI Defendants must therefore be dismissed. Minute Entry, ECF No. 62.

The Court agrees.

In her Amended Complaint, Ms. Doe names the USI Defendants as parties to this case because of pending litigation against USI at the time of her termination from Paychex. Am. Compl. bbbb–cccc. She alleges that that litigation gave the USI Defendants "indirect control"

over her termination. Id. at bbbb. At the April 9, 2019 hearing, Ms. Doe could not explain how the USI Defendants exerted any control over her employment relationship with Paychex. Minute Entry, ECF No. 62.

The USI Defendants' relationship to Ms. Doe, in a separate and unrelated case, is an insufficient basis for liability in this employment discrimination case against Paychex. As a result, Ms. Doe has stated no plausible claim for relief against the USI Defendants and the USI Defendants must be dismissed from this lawsuit. *Iqbal*, 556 U.S. at 679 ("only a complaint that states a plausible claim for relief survives a motion to dismiss."); *Arista Records LLC*, 604 F.3d at 120 (the complaint must contain "factual amplification . . . to render a claim plausible.").

Accordingly, all of the claims against the USI Defendants will be dismissed.

## F.     Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. FED. R. CIV. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is

"unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal citations omitted)).

Paychex argues that Ms. Doe's second and third amended complaints were filed too late and in violation of the pleading requirements of Federal Rule of Civil Procedure 15 (e.g., because Ms. Doe sought no leave to file a third amended Complaint totaling 127 pages). Paychex Mem. of Law in Opp. to Pls. Mot. for Leave to Amend Compl., ECF No. 52; Fed. R. Civ. P. 15.[5]

The Court agrees.

Ms. Doe has submitted four versions of her complaint, totaling more than 250 pages. Each version has retained the same underlying facts as her initial Complaint, *see* Mot. for Leave to Amend Compl., ECF No. 46 ("The Plaintiff has not changed any facts to support her causes of action"), but has included additional recollections and disparate theories of legal recovery (*e.g.*, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1111 *et seq.*; Lanham Act, 15 U.S.C. §1051 et seq.; Fair Credit Reporting Act, 16 U.S.C. § 1681 *et seq.*; and federal procurement laws, Second. Am. Compl., ECF No. 35, ¶ 6.). As described above, nearly all of the laws cited by Ms. Doe fail to provide a private cause of action or avenue of redress for her relatively straightforward claim of employment discrimination.

At the April 9, 2019 hearing, Ms. Doe suggested that each subsequent complaint invalidated Defendants' prior motions to dismiss and required Defendants to address her arguments anew.

Given that Ms. Doe's Amended Complaint was filed within four months of her initial Complaint, during the early stages of this litigation, the Court will grant, *sua sponte* and *nunc*

---

[5] Additionally, USI Defendants argue that Plaintiff should not be permitted to amend her Amended Complaint because she failed to properly serve the USI Defendants, has filed "extraordinarily lengthy and convoluted claims," and has failed to "provide a short and plain statement of her claims." USI Defs. Mem. in Opp. to Mot. to Amend, ECF No. 51.

*pro tunc*, Plaintiff's oral motion to amend her Complaint. Ms. Doe's Amended Complaint, ECF No. 12, contains the employment discrimination allegations that form the basis of this lawsuit, and thus fairly serves as the operative complaint for this litigation.

The Court will not permit further amendment as it would cause undue delay and prejudice to Defendants, *Foman*, 371 U.S. at 182, with little or no benefit to Ms. Doe. Ms. Doe's filings suggest that the essential facts of her case remain unchanged since the initial complaint. Mot. for Leave to Amend Compl., ECF No. 46 ("The Plaintiff has not changed any facts . . . ."). Defendants have responded to those allegations, and this litigation will proceed to discovery on Ms. Doe's remaining claims of sex discrimination, hostile work environment, and retaliation under Title VII. Given these considerations of fairness, and consistent with this Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Deitz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court denies Plaintiff's motion to amend. ECF No. 46.

### G.    Motion to Seal

Public trials are an essential aspect of our system of government. *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) ("[T]he First Amendment does secure to the public and to the press a right of access to civil proceedings . . . because public access to civil trials enhances the quality and safeguards the integrity of the factfinding process, fosters an appearance of fairness, and heightens public respect for the judicial process, while permitting 'the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self government.") (internal citations and quotations omitted)). The Second Circuit has repeatedly held that "the common law right of public access to judicial

documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

This common law right attaches to "judicial document[s]," or items that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (2d Cir. 2006) (*citing United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")). "In order to determine whether a judicial document may be filed under seal, the court must balance the common law right of access against any competing considerations, such as . . . the privacy interests of those resisting disclosure." *Raffaele v. City of New York*, No. 13-cv-4607 (KAM) (VVP), 2014 WL 2573464, at *1 (E.D.N.Y. June 9, 2014) (internal quotation marks omitted) (*citing Lugosch*, 435 F.3d at 120). "Under both the common law and First Amendment frameworks, the party seeking to file a document under seal bears the burden of demonstrating that sealing is warranted." *Id.* (*citing DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)). "To overcome the First Amendment right of access, the proponent of sealing must demonstrate that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) (internal quotation marks omitted).

The Violence Against Women Act provides a limited basis for removing records from public view. 18 U.S.C. § 2265. It instructs courts to honor civil protection orders from other jurisdictions:

> Any protection order issued that is consistent with subsection (b) of this section by the court of one State, Indian tribe, or territory . . . shall be accorded full faith and credit by the court of another State, Indian tribe, or territory (the enforcing State, Indian tribe, or territory) and enforced by the court and law enforcement personnel of the other State, Indian tribal government or Territory as if it were the order of the enforcing State or tribe.

18 U.S.C. § 2265(a); *see also* Maureen Sheeran & Emilie Meyer, *Civil Protection Orders: A Guide for Improving Practice* (2010). The Act provides no specific guidance on the sealing of court documents.

Ms. Doe moves to seal the case on domestic violence grounds. Mot. to Seal, ECF No. 2; Pl. Mot. in Resp. to Def. Mot. to Unseal Docket, ECF No. 20, at 2 (Explaining that she was "attacked in 2006 [and] left . . . permanently disabled and scarred in her right arm.").

Defendants argue that Ms. Doe has failed to support her request to seal. Def. Mot. to Unseal Docket, ECF No. 23, at 4.

The Court agrees.

The filings in this lawsuit are clearly judicial documents "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (*citing United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")). As a result, they must remain open for public scrutiny absent a showing that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144. Ms. Doe has failed to make such a showing.

Indeed, while protection of domestic violence victims is an important public policy, Ms. Doe has failed to demonstrate that the filings in this employment action would put her in danger, that a protection order from another jurisdiction should be honored by this court, *see* 18 U.S.C. § 2265(a), or that any cognizable basis exists for sealing this case. Further, the sealing of this case is not "narrowly tailored" to serve any private interest. *Bernstein*, 814 F.3d at 144 ("To overcome the First Amendment right of access, the proponent of sealing must demonstrate that closure . . . is narrowly tailored[.]").

In sum, Ms. Doe has not met her burden to demonstrate that sealing is warranted in this case. *Raffaele*, 2014 WL 2573464, at *1 (Explaining that "[u]nder both the common law and First Amendment frameworks, the party seeking to file a document under seal bears the burden of demonstrating that sealing is warranted.").

Accordingly, the Court will deny Ms. Doe's motion to seal, ECF No. 2 and grant Defendants' motion to unseal, ECF No. 23.

## H. Motion to Disqualify or Recuse

With few exceptions, parties have the right to choose their counsel. *See*, *e.g.*, *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 503–04 (2d Cir. 1991) ("On several occasions in recent years the Supreme Court has elaborated on the essential meaning of the Sixth Amendment right to counsel . . . . the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment . . . . Section 6050–I does not preclude would-be clients from using their own funds to hire whomever they choose. To avoid disclosure under section 6050–I, they need only pay counsel in some other manner than with cash. The choice is theirs."). "Because disqualification motions interfere with a party's right to the counsel of its choice and are often made for tactical reasons, they are viewed with disfavor, and the party seeking disqualification must meet a heavy burden of proof in order to prevail." *Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009) (internal quotations and citations omitted)); *see also In re Corp. Res. Servs., Inc.*, 595 B.R. 434, 441 (S.D.N.Y. 2019) (Explaining that the party moving for disqualification must meet a "heavy burden of proof in order to prevail.") (*quoting Gormin v. Hubregsen*, No. 8-cv-7674 (PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (internal quotation marks omitted)). In determining whether disqualification is appropriate, a court will consult the local rules of professional conduct.

*Amusement Indus., Inc.*, 657 F. Supp. 2d at 460. "[S]uch rules 'need not be rigidly applied[.]'" *Id.* (*quoting Lyman v. City of Albany*, 2007 WL 496454, at *3 (N.D.N.Y. Feb. 12, 2007).

Rule 1 of the Connecticut Rules of Professional Conduct governs conflicts of interest. Conn. Super. Ct., CONN. R. PROF'L CONDUCT (2019). Rule 1.7 explains that conflicts of interest arise when an attorney cannot fulfill a duty to his or her client ("a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."). CONN. R. PROF'L CONDUCT 1.7. For example, an attorney must take care not to disclose one client's trade secrets to another client. *Id.* An attorney may, however, jointly represent clients, represent opposing clients in separate litigation with consent, and may take inconsistent legal positions "in different tribunals at different times on behalf of different clients." *Id.*

Ms. Doe has identified no basis in law or fact to support her request to disqualify Mr. Zaken or his firm. Ms. Doe was not represented by and does not enjoy attorney-client privilege with Mr. Zaken or his firm. Rather, Paychex and the USI Defendants are owed this duty. Though Mr. Zaken previously represented the USI Defendants against Ms. Doe, the Connecticut Rules of Professional Conduct do not recommend disqualification of attorneys in such situations, even when confidential information was exchanged between the parties in preceding litigation. *See* Mot. to Recuse at 1 (Arguing for disqualification on the grounds that confidential information was previously discovered). Further, Ms. Doe has provided no evidence of wrong-doing or unethical conduct.

For these reasons, Ms. Doe has not met her "heavy burden of proof[.]" *Amusement Indus., Inc.*, 657 F. Supp. 2d at 460. The Court will not deprive Paychex or the USI Defendants

of the counsel of their choice. *See*, *Goldberger & Dubin, P.C.*, 935 F.2d at 503–04 ("the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment[.]").

Accordingly, the Court will deny Ms. Doe's motion to recuse, ECF No. 19.

## I.  Motion to Supplement and for a New Hearing

Following the April 9, 2019 hearing on all motions, Ms. Doe filed a supplemental brief and moved for a new hearing to enable her to "correct potential errors . . . and clarify any confusion." Mot. for New Hearing on the Mots. at 1.

The Court declines to permit Ms. Doe's supplemental filing and denies her motion for a new hearing.

Federal Rule of Civil Procedure 15(d) governs supplemental filings. FED. R. CIV. P. 15(d). It states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.*

The Second Circuit reviews a district court's denial of leave to file a supplemental pleading for abuse of discretion. *Klein v. PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016) (*citing Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65–66 (2d Cir.1995). In *Klein*, the Second Circuit upheld a district court's denial of plaintiffs' leave to file a supplemental pleading because plaintiffs made the request well into the litigation, had already amended their pleadings, and the supplemental pleading would not meaningfully bolster the case. *Klein*, 644 F. App'x at 15 ("The district court acted within its discretion here. The district court reasoned that the defendants should not have 'to play whack-a-mole with this case' 'every time someone is indicted' and that the new allegations appeared to 'be duplicative of what's already in the [second amended]

complaint[.]' Moreover, the request to file a supplemental pleading was made some eighteen months after the suit was commenced, after the Investors had already filed and amended their pleadings, and after PetroChina had already filed two motions to dismiss.")(*citing Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989) (that the courts have a general interest in promoting the efficient resolution of disputes); *see also Deitz*, 136 S. Ct. at 1892 (holding that district courts have inherent authority to manage their dockets with a "view toward the efficient and expedient resolution of cases.").

Ms. Doe's supplemental filing and motion for a new hearing arrive more than sixteen months into this lawsuit, *see* Compl., following several amendments to her complaint, *see* Second Am. Compl., Defendants' filing of two motions to dismiss, Mot. to Dismiss, Paychex Mot. to Dismiss Second Am. Compl., USI Mot. to Dismiss Second Am. Compl., and a hearing on all motions, scheduled more than one month in advance, *see* Set Deadlines/Hearings, ECF No. 58, Minute Entry, ECF No. 62. Ms. Doe's supplemental filing reiterates the facts and legal theories considered by the Court at the hearing and in this Order. Mot. for New Hearing on the Mots. at 2 ("Plaintiff was terminated three (3) days after reporting discrimination[.]"). Ms. Doe's six reasons for requesting a new hearing largely relate to her interpretations of the Federal Rules of Civil Procedure, *id*. at 12–13; they do not contain new, relevant facts or claims for relief. As a result, Ms. Doe's supplemental filing does not meaningfully bolster her case. *Klein*, 644 F. App'x at 15 ("The fact that yet another corporate officer was indicted did not meaningfully bolster the Investors' case.").

The Court has no basis for requiring Defendants to respond to Ms. Doe's supplemental filing or prepare for and attend a second hearing on the same motions to dismiss. *Klein*, 644 F.

App'x at 15 ("The district court acted within its discretion here. The district court reasoned that the defendants should not have 'to play whack-a-mole with this case.'").

Accordingly, the Court will exercise its inherent authority to manage its docket and ensure an efficient resolution of this case by declining to consider Ms. Doe's supplemental filing and denying her motion for a new hearing. *Deitz*, 136 S. Ct. at 1892 (that district courts have inherent authority to manage their dockets with a "view toward the efficient and expedient resolution of cases."); *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989) (finding a general interest in the promotion of efficient resolution of disputes.).

## IV.    CONCLUSION

For the reasons set forth above, the Court now **GRANTS in part and DENIES in part** Defendants' motions to dismiss, and dismisses all claims against the USI Defendants, ECF No. 48; and Ms. Doe's claims against Paychex for violations of the Americans with Disabilities Act, Health Insurance Portability Accountability Act, National Labor Relations Act, state and federal laws regarding data privacy, employee handbooks, libel and slander, protected speech, sales representative commissions, sick leave violations, protected speech, and tortious interference, leaving only her claims for sex discrimination, a hostile workplace, and retaliation under Title VII in this case, ECF Nos. 16, 47; **DENIES** Ms. Doe's motion to amend, ECF No. 46; **DENIES** Ms. Doe's motion to seal the case, ECF No. 2, **GRANTS** Defendants' motion to unseal the case, ECF No. 23; **DENIES** Ms. Doe's motion to recuse, ECF No. 19, and **DENIES** Ms. Doe's motion to supplement and for a new hearing, ECF, No. 65.

The Clerk of the Court is respectfully directed to dismiss USI Insurance Services of Connecticut, Inc. and USI Insurance Services LLC from this case.

The remaining parties are ordered to convene a Rule 26(f) planning meeting and to submit a Rule 26(f) Report to the Court no later than June 7, 2019.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of May, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE